**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE *EX PARTE* APPLICATION OF CLÁUDIO DÊNIS MAKSOUD FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782 | Case No.: |

**CLÁUDIO DÊNIS MAKSOUD'S APPLICATION FOR AN**
**ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

EPGD ATTORNEYS AT LAW, P.A.
*Attorneys for Petitioner Cláudio Dênis Maksoud*
777 SW 37th Ave. Ste. 510
Miami, FL 33135
T: (786) 837-6787
F: (305) 718-0687
andrea@epgdlaw.com
joanna@epgdlaw.com

By: _____
Andrea Natale, Esq.
NY Bar No: 5638952

Dated: April 21, 2025.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 3

    A.    The Parties .................................................................................................... 3

    B.    Relevant Non-Parties .................................................................................... 4

    C.    The Maksoud Marriage and Henry's Probate Proceeding ........................... 5

    D.    Roberto's Conduct Before, During, and After Ilde's Probate Proceeding Beginning .......................................................................... 7

    E.    Roberto's Concealment of Assets From the Probate Proceeding ............... 8

    F.    The Probate Proceeding................................................................................ 9

    G.    The Foreign Proceeding – The Concealed Assets Proceeding ................... 10

    H.    Respondents Possess Highly Material Information For Use in the Foreign Proceedings .................................................................... 13

ARGUMENT ...................................................................................................................... 14

    I.    THIS APPLICATION SATISFIES THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782(a) AND THE *INTEL* DISCRETIONARY FACTORS .................................................................... 14

        A.    Petitioner Satisfies the Statutory Requirements of 28 U.S.C. § 1782 .......... 15

        1.    *Respondents Are "Found" In The Southern District Of New York.* ............ 15

        2.    *The Requested Discovery is "For Use" In a Foreign Proceeding.* ............. 16

        3.    *Petitioner is an "Interested Person".* ........................................................... 17

        B.    All of the Discretionary Factors Weigh in Favor of Petitioners' Application ................................................................................ 18

        1.    *Respondents Are Not and Will Not Be Participants in the Probate Proceeding.* .................................................................... 18

        2.    *The Brazilian Probate Court is Receptive to U.S. Judicial Assistance.* .................................................................... 19

   4. *The Application is Tailored to Avoid Unnecessary Burdens in Accordance With the Federal Rules of Civil Procedure* ............................ 21

**II. THE PETITIONER SEEKS THE APPLICATION TO BE GRANTED *EX PARTE*** ........................................................................................................**23**

**CONCLUSION** ........................................................................................................**24**

## TABLE OF AUTHORITIES

*Brandi-Dohrn v. IKB Deutsche Industriebank AG.*
  673 F.3d 76, 80 (2nd Cir. 2012) .................................................................. 15, 17, 20

*Certain Funds, Accounts and/or Invesment Vehicles v. KPMG, LLP.*
  798 F.3d 113, 120 (2d Cir. 2015) ................................................................. 17

*Esses v. Hanania*
101 F.3d 873, 874 (2d Cir. 1996) .................................................................. 23

*Euromepa S.A. v. R. Esmerian, Inc.*
51 F.3d 1095, 1097 (2d Cir. 1995) ................................................................ 15, 19

*Gorsoan Ltd. V. Bullock*
  652 F. App'x 7, 9 (2d Cir. 2016) ................................................................... 18

*Gushlak v. Gushlak*
  486 Fed. Appx. 215, 217 (2d Cir. 2012) ....................................................... 23, 24

*In re Accent Delight Int'l Ltd..*
  No. 16-MC-125 (JMF), 2018, WL 2849724, at * 4 (S.D.N.Y. June 11, 2018) ................ 17, 20

*In re Aquino Chad.*
  No. 19 Misc. 261, 2019 WL 2502060, at *3 (S.D.N.Y. June 17, 2019) ................... 16

*In re Application of 000 Promneftstroy for an Order to Conduct Discovery for use in Foreign Proceeding*
134 F. Supp. 3d 789, 792 (S.D.N.Y. 2015) ..................................................... 18, 19

*In re Application of Gianoli.*
  3 F.3d 54, 55 (2d Cir. 1993) ........................................................................ 23

*In re Application for an Order Permitting Metallgesellschaft AG to take Discovery.*
  121 F.3d 77, 78 (2d Cir. 1997) ..................................................................... 14, 15, 20

*In re Application for an Order Pursuant to 28 U.S.C. § 1782*
773 F.3d at 457–58 ......................................................................................

*In re Ex Parte Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. §1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings*
No. 15-MC-417 (LAK), 2016 WL 702327, at *9 (S.D.N.Y. Feb. 18, 2016) .................. 21

*In re Bernal,*
  18-21951-MC, 2018 WL 6620085 (S.D. Fla. Dec. 18, 2018) ............................... 23

*In re BNP Paribas Jersey Tr. Corp. Ltd. for an Order Pursuant to 28 U.S.C. §1782 to Conduct*
  *Discovery for Use in Foreign Proceedings*
  No. 18-MC-00047 (PAC), 2018 WL 895675, at *3 (S.D.N.Y. Feb. 14, 2018) ........................... 18

*In re Bourlakova,*
  No. 24-MC-71 (JPO), 2024 WL 4839047, at *1 (S.D.N.Y. Nov. 20, 2024) ........................... 22

*In re Doosan Heavy Indus,, & Constr. Co., Ltd.*
  2020 WL 1864903, at 1 (E.D.N.Y. Apr. 14, 2020) .................................................................... 15

*In re Edelman*
  295 F.3d 171, 179-80 (2d Cir. 2002) .................................................................................. 15, 21

*In re Gemeinschaftspraxis Dr. Med. Schottdorf,*
  No. Civ. M19-88 (BSJ), 2006 U.S. Dist. LEXIS 94161, at *1 (S.D.N.Y. Dec. 29, 2006) ....... 23

*In re Guo*
  965 F.3d 96 (2d Cir. 2020) ..........................................................................................................

*In re Investbank PSC,*
  No. 20 MISC. 260 (AT), 2020 WL 8512850 (S.D.N.Y. Dec. 30, 2020) ..................................... 16

*In re Lane.,*
  2022 WL 16737132, at *2 .......................................................................................................... 16

*In re Letter of Request from Supreme Court of Hong Kong*
  138 F.R.D. 27, 32 n.6 (S.D.N.Y. 1991) ...................................................................................... 23

*In re Mota*
  No. MC 19-00369 (MN), 2020 WL 95493, at *1 (D. Del. Jan. 8, 2020) ................................... 23

*In re Pimenta*
  942 F. Supp. 26 1282 (S.D. Fla. 2013) ...................................................................................... 16

*In re Request for Int'l Jud. Assistance From the Nat'l Ct. Admin. of the Republic of Korea*
  No. C15-80069 MISC LB, 2015 WL 1064790, at *2 (N.D. Cal. Mar. 11, 2015) .................. 23

*In re Sargeant,*
  278 F. Supp. 3d 814, 820 (S.D.N.Y. 2017) ................................................................................ 16

*In re Safra,*
  2022 WL 3584541 ...................................................................................................................... 19

*In re W. Afr. Min. Trading Ltd,*
  No. 24 MISC. 114 (DEH), 2024 WL 3862293, at *5 (S.D.N.Y. Aug. 19, 2024) ..................... 22

iv

*Intel Corp. v. Advanced Micro Devices, Inc.*
  542 U.S. 241 (2004) ............................................................................................... passim

*Licci c. Lebanese Can. Bank, SAL*
  20 N.Y. 3d 327 (2012) ............................................................................................... 3

*Mees,*
  793 F.3d at 291, 299 ............................................................................................... *passim*

*Matter of Colombo Agroindustria S.A.,*
  22-21670-MC, 2022 WL 2167719 (S.D. Fla. June 16, 2022) ................................................. 16

*Schmitz.,*
  376 F.3d at 84 ............................................................................................... 19

**Statutes**

28 U.S.C. § 1782 ............................................................................................... passim

Cláudio Dênis Maksoud ("Cláudio" or "Petitioner") respectfully submits this application pursuant to 28 U.S.C. § 1782 ("Section 1782") for an order authorizing him to issue and serve subpoenas *duces tecum* on the following Correspondent Banks: Bank of America, N.A. ("Bank of America"); Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch"); The Clearing House Payments Company LLC ("CHIPS"); and The Federal Reserve Bank of New York ("FED-NY") (together, "Respondents") for use in foreign proceedings in Brazil ("the Application"). The proposed form subpoenas are attached hereto as **Exhibit A**. A Proposed Order is attached hereto as **Exhibit B**.

The pertinent facts set forth herein are supported by the Declaration of Petitioner's Brazilian attorney, Katia Vilhena Reina which is attached hereto as **Exhibit C** (the "Declaration").

## PRELIMINARY STATEMENT

The Application has its origins in Mrs. Ilde Birosel Maksoud ("Ilde") probate proceeding in the State of São Paulo, Brazil ("Probate Proceeding"). Petitioner is one of the two sons of Mrs. Ilde, who passed away in October 2020, leaving an officially declared estate of R$ 21.462.352,84 to her heirs.[1]

After thorough investigation, Petitioner found out that some of the assets that belonged to the common estate and shall thus be equally split between all the heirs were concealed from the Probate Proceeding by his brother, Roberto Felix Maksoud ("Roberto"). Most of these assets are directly linked to transactions conducted through corresponding banks, using American dollars as the main currency.

In light of this information, Petitioner filed a new claim requiring all heirs to disclose and inform to the Brazilian court all direct and indirect donations made by Ilde while alive, so the Court

---

[1] See Decl. at Kátia Vilhena Reina, ¶ 9.

may determine its partition between all the heirs (the "<u>Concealed Assets Proceeding</u>" or the "Brazilian Proceeding").[2]

Article 5, section XXX of the Brazilian Constitution guarantees the inheritance right to all individuals.[3] Under Brazilian law, individuals are barred from freely disposing of their assets during life only to favor certain heirs. Mandatory[4] heirs shall be awarded their fair share of the estate regardless of certain preferences the deceased may have had during his lifetime, and assets should be preserved for partition.

Therefore, in light of the recent discoveries about Ilde's assets, Petitioner files this Application to obtain targeted evidence from Respondents, corresponding banks incorporated in this District, which will demonstrate to the Brazilian court in the Concealed Assets Proceeding that a relevant part of Ilde's assets was not fully disclosed to the probate proceeding to the detriment of the equal and fair partition of the common estate among all the mandatory heirs.

This Application meets all requirements of Section 1782. Respondents "reside or are found" in the Southern District of New York. The discovery sought by the Petitioner is highly material and relevant to the issues at stake in the Brazilian Proceeding. Moreover, each of the discretionary factors laid down in the Supreme Court's *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241 (2004) decision favors authorizing the discovery sought by Petitioner: (i) Respondents are not parties to the Brazilian Proceeding, and the Petitioner is otherwise unable to obtain the discovery in Brazil; (ii) the Brazilian court will be receptive to discovery that the

---

[2] See Decl. at Kátia Vilhena Reina, ¶ 11.

[3] Brazil's Federal Constitution enacted in 1988. Article 5, Section XXX of the Brazilian Constitution reads: "All are equal under the law, without distinction of any nature, guaranteeing to all Brazilians and foreigners residents in the country the inviolability of the right to life, freedom, equality, security, and property, in the following terms: XXX It is guaranteed the right of inheritance." See Decl. at Kátia Vilhena Reina, ¶ 43.

[4] Heirs who are entitled to inheritance under Brazilian law. *Id.*

Petitioner seeks; (iii) the Application does not circumvent foreign proof gathering restrictions and is made in good faith; and (iv) the discovery sought is neither unduly intrusive nor burdensome. In addition, granting this Application would also further the "twin aims" of Section 1782: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts."[5] Accordingly, Petitioner respectfully requests that the Court grant Petitioner's Application and permit Petitioner to serve the Subpoenas on Respondents.

## FACTUAL BACKGROUND

### A. The Parties

***Cláudio Dênis Maksoud*** ("Cláudio"). Cláudio is one of the two sons of Mrs. Ilde, who passed away in October 2020, and one of the three children of Henry Maksoud, a famous Brazilian businessman who passed away in April 2014.[6] After coming into evidence showing that part Ilde's estate might have not been fully disclosed to the Probate Proceeding by his brother, Cláudio filed a new claim, the Concealed Assets Proceeding, to request Roberto to provide further information on the assets that were not disclosed to the Probate Court and ultimately split equally between all the heirs. Petitioner decided to file this Application in an attempt to seek further evidence on the assets that his brother concealed from him and from the court in Brazil.

***Bank of America, N.A.*** ("Bank of America")***;*** Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch") (altogether, "Correspondent Banks"). The Correspondent Banks are all headquartered in New York, New York, and are commonly known to act as correspondent or intermediary banks[7] for

---

[5] *Mees v. Buiter*, 793 F.3d 291, 297–98 (2d Cir. 2015).

[6] See Decl. at Kátia Vilhena Reina, ¶ 9.

[7] The New York Court of Appeals has recognized the "widespread use of correspondent accounts nominally in New York to facilitate the flow of money worldwide, often for transactions that otherwise have no other connection to New York, or indeed the United States." *Licci v. Lebanese Can. Bank, SAL*, 20 N.Y.3d 327 (2012).

US dollar-denominated wire transfers passing from domestic banks to international banks, and vice versa.

***The Clearing House Payments Company*** ("<u>CHIPS</u>"). CHIPS is headquartered in New York, New York, and it acts as a clearinghouse bank for U.S. dollar-denominated wire transfers between domestic and international banks. It processes and maintain records of payment messages between banks.

***Federal Reserve Bank of New York*** ("<u>FED-NY</u>"). The Federal Reserve Bank is headquartered in New York, New York; As a provider of the Fedwire Funds Service through its Wholesale Product Officer, the Federal Bank also acts as a wire-transfer clearinghouse for U.S. dollar-denominate wire transfers between domestic and international banks.

### B.  <u>Relevant Non-Parties</u>

***Ilde Birosel Maksoud*** ("<u>Ilde</u>"). Mrs. Ilde passed away in October 2020, at the age of 90, in Rio de Janeiro, leaving two sons, Petitioner and Roberto.[8] Mrs. Ilde was married for over 30 years to Henry Maksoud ("<u>Henry</u>"), a famous Brazilian businessman and founder of the Maksoud Plaza Hotel.[9] In 2006, when the couple were officially divorced, Ilde was entitled to half of the couple's common estate, which summed R$ 50 million at the time, an approximate amount of US$ 100 million at the time.[10]

***Roberto Maksoud*** ("<u>Roberto</u>"). Roberto is Petitioner's brother, son of Ilde and Henry. Shortly before Ilde's passing, Roberto moved to Ilde's apartment with his wife, Fernanda, and began taking

---

[8] See Decl. at Kátia Vilhena Reina, ¶ 9.

[9] See Decl. at Kátia Vilhena Reina, ¶ 13.

[10] See Decl. at Kátia Vilhena Reina, ¶ 18.

complete control of Ilde's private and financial life, finally leading to the concealment of assets from the Probate Court after Ilde's passing.[11] Roberto has one son, Henry Neto.[12]

### C.  **The Maksoud Marriage and Henry's Probate Proceeding**

In Mrs. Ilde was a Brazilian-Philippine citizen, who was married until 1993 to Henry Maksoud, a Brazilian businessman and founder of several companies, including the famous Maksoud Plaza Hotel. Mrs. Ilde and Mr. Henry were married for 30 years and together they built an expressive estate.[13]

In 2006, when the couple officialized their divorce, Ilde and Henry formalized the distribution of their common estate through an agreement which was later approved by the São Paulo State Court. On that occasion, each one was entitled to a share of nearly R$ 50 million of the estate, summed up with a valuable an art and jewelry collection.[14]

In 2014, Mr. Henry passed away. By that time, a long judicial battle took place among his heirs, including Mr. Claudio and Mr. Roberto, along with Mrs. Georgina, Mr. Henry's second wife, Mrs. Vera Lúcia, daughter to Mr. Henry, and Mr. Henry Neto, Mr. Henry's grandson and heir according to his public will.[15]

Mr. Henry's probate proceeding is still ongoing and on February 11, 2019, Mr. Roberto was named administrator of the Probate Proceeding.[16] However, Roberto was removed from this position by October of that same year by the probate court due to his behavior contrary to judicial deadlines. In addition, the court also took notice that Roberto celebrated an agreement with his

---

[11] See Decl. at Kátia Vilhena Reina, ¶ 39.

[12] See Decl. at Kátia Vilhena Reina, ¶ 19.

[13] See Decl. at Kátia Vilhena Reina, ¶ 13.

[14] See Decl. at Kátia Vilhena Reina, ¶ 47.

[15] See Decl. at Kátia Vilhena Reina, ¶ 13.

[16] See Decl. at Kátia Vilhena Reina, ¶ 18.

hired counsel on additional attorney fees based upon assets from the estate that could be received by Roberto, but which would not have been disclosed to the probate court.[17]

Roberto's removal from the position of administrator, however, did not stop him from concealing assets from the common estate and acting in prejudice of the other heirs, as provided by the other heirs in an ongoing Accounting Proceeding filed against Roberto.[18]

Mr. Henry, as many other Brazilian businessmen, kept part of his assets in foreign jurisdictions: for instance, he founded Hidroservice International Ltd, a holding company incorporated in the Cayman Islands. Henry, Cláudio, Roberto and Hidroservice Engenharia Ltda. were the shareholders of the holding company.[19]

This company was the owner of an apartment kept by the Maksouda family in New York, New York.[20]

After Henry's passing, Roberto initiated a probate proceeding in the Cayman Islands' Courts, being nominated as administrator of the estate. However, after 7 years, Roberto did not provide any information on this proceeding to the other heirs, nor has provided any information to the Brazilian probate court on assets detained by the deceased in foreign jurisdictions.[21]

Given Roberto's inability to provide information on the foreign probate proceeding, Hidroservice Engenharia, Georgina and Vera Lúcia filed an accounting proceeding requesting, among other things, information on rental or selling of real estate detained by Hidroservice International. By that time, Petitioner took notice of sales advertising of the apartment kept in New

---

[17] See Decl. at Kátia Vilhena Reina, ¶ 21.

[18] See Decl. at Kátia Vilhena Reina, ¶ 22.

[19] See Decl. at Kátia Vilhena Reina, ¶ 25.

[20] See Decl. at Kátia Vilhena Reina, ¶ 24.

[21] See Decl. at Kátia Vilhena Reina, ¶ 25.

York.[22] The accounting proceeding was initially dismissed, what led Petition to file a foreign proceeding in the Cayman Islands aiming to block any transactions with Henry's properties, in an attempt to protect the common estate from Roberto's actions.[23]

However, shortly after, the First Chamber of Commerce of the São Paulo State Court reversed the decision that dismissed the proceeding and determined it should proceed, issuing a final judgment ordering Roberto to provide information on the common estate. [24]

Roberto provided documentation related to the foreign company's management which attested the sale of the property initially detained by the company for an amount of U$ 2,375,000.00. This sum, however, was never distributed among the other shareholders of the company, that is, Cláudio and Hidroservice Ltda.[25]

### D. **Roberto's Conduct Before, During, and After Ilde's Probate Proceeding Beginning**

In 2014, after Henry's passing, Roberto moved with his family to Ilde's house, when he assumed complete control of Ilde's financial and personal life, including avoiding contact from other family members even by the time Ilde passed away.[26]

Due to Roberto's behavior, his own son, Henry Neto, filed a civil lawsuit in order to investigate the legality of the acts taken by Roberto.[27] In this proceeding, several statements were provided by people who used to be close to Ilde and who informed that, after Roberto moved to

---

[22] See Decl. at Kátia Vilhena Reina, ¶ 26.

[23] See Decl. at Kátia Vilhena Reina, ¶ 27.

[24] See Decl. at Kátia Vilhena Reina, ¶ 27.

[25] See Decl. at Kátia Vilhena Reina, ¶ 28.

[26] See Decl. at Kátia Vilhena Reina, ¶ 29.

[27] Proceeding No. [], pending before the []. See Decl. at Kátia Vilhena Reina, ¶30.

her house, she was submitted to a private prison situation. Even Petitioner, her own son, was forbidden from saying goodbye to his mother during her final days.[28]

When moved to Ilde's house with his wife, Roberto and Fernanda managed to have Ilde grant broad powers to Fernanda from 2014 to 2017, who was then her daughter-in-law, for the administration and management of all aspects of her life, especially financial matters and including assets kept in foreign jurisdictions.[29] A translated copy of the power of attorney is attached to the Declaration as **Exhibit D**.

Moreover, even though Ilde was a wealthy woman, with her wealth valued for over R$ 50 million reais, she passed away in a modest hospital, in October 2020.[30]

Considering this history of abuses towards Ilde's private and financial life, the São Paulo State Court granted Cláudio's request for urgent measures to block Ilde's estate and to list all movable goods from her apartment, in addition to the apartment itself.[31]

### E.  Roberto's Concealment of Assets From the Probate Proceeding

Considering all the facts above stated and after conducting thorough investigation, Claudio became aware of the existence of other assets owned by his mother, assets that Roberto always knew about, and which were never disclosed to the Probate Court.

According to the information gathered by Claudio, Ilde Maksoud possessed investments in foreign bank accounts through the offshore company DCP International LLC ("DCP"). These investments were located especially in England, Switzerland, and Monaco and amounted to nearly

---

[28] See Decl. at Kátia Vilhena Reina, ¶ 30.

[29] See Decl. at Kátia Vilhena Reina, ¶ 31.

[30] See Decl. at Kátia Vilhena Reina, ¶ 32.

[31] See Decl. at Kátia Vilhena Reina, ¶ 39.

US$ 20,000,000.00.[32] In addition, although Roberto is mentioned as linked to all of these accounts, which exist since at least 2011, he never mentioned the existence of such assets to the probate court.[33]

DCP International LLC is nothing more than a shell company incorporated in order to conceal Ilde's assets from the Brazilian jurisdiction, accounting for the practice of a "fraudulent" transaction pursuant to articles 167, 168, and 169 of the Brazilian Civil Code, and, therefore, its incorporation is complete void according to Brazilian Civil Law.[34]

Given the void nature of the company's incorporation, its assets, in fact, pertain to Ilde and, therefore, must be incorporated in her estate for the purpose of sharing it among Ilde's mandatory heirs.[35]

Moreover, given the "fraudulent" nature of the company's incorporation, a Brazilian Court may also pierce the corporate veil according to Article 50 of the Brazilian Civil Code. The assets, therefore, may return to the common estate to be equally split among the heirs.[36]

### F. **The Probate Proceeding**

On October 31, 2020, Mrs. Ilde Maksoud died. On November 2, 2020, Ilde's heirs filed the Probate Proceeding before the 10th Family and Succession Chamber of the State Court of São Paulo (the "Probate Court") (proceeding no. 1103918-96.2020.8.26.0100)[37], according to section 1,784 of the Brazilian Civil Code, which states that a probate proceeding is mandatory for the

---

[32] *See* **Exhibit E** to the Decl. at Kátia Vilhena Reina, ¶ 35.

[33] See Decl. at Kátia Vilhena Reina, ¶ 35.

[34] See Decl. at Kátia Vilhena Reina, ¶ 36.

[35] See Decl. at Kátia Vilhena Reina, ¶ 37.

[36] See Decl. at Kátia Vilhena Reina, ¶ 38.

[37] The initial petition is attached to the. at Kátia Vilhena Reina, ¶ 39. as **Exhibit G**.

distribution of the inheritance of the deceased among the heirs.[38] Mr. Roberto was named administrator of the estate on May 16, 2021.

On March 7, 2022, the Probate Court requested that Mr. Roberto informed all the assets in his mother's estate, to which he replied on March 29, 2022[39], not informing the court about any assets kept by his mother in foreign jurisdictions.

Relying on Roberto's declaration as administrator of the estate, on January 19, 2023, the heirs adopted, under the approval of the Court, an amicable partition plan ("Amicable Plan")[40]. Because Ilde left a public will stating that Roberto would be entitled to all her disposable assets, he was finally entitled to a 75% share of the estate, while Petitioner to a 25% share.[41]

The Amicable Plan also did not consider the amount of jewelry and the art collection owned by Mrs. Ilde. For instance, the Tarsila do Amaral painting "*Figura Azul*" dates to the same year as "*Caipirinha,*" another painting by the same artist which was sold for R$ 50,000,000.00 in 2019.

In spite of all the assets concealed by Roberto, of which Petitioner did not take account of at the time, the Amicable Plan was adopted and ratified by the Probate Court, and the Probate Proceeding was closed.

### G.  The Foreign Proceeding – The Concealed Assets Proceeding

After gathering information that Mrs. Ilde possessed assets in foreign jurisdictions which were not disclosed by Roberto to the Probate Court, Petitioner filed a new lawsuit in the São Paulo State Court on November 27, 2011[42], requesting the Brazilian court to include the assets held by

---

[38] See Decl. at Kátia Vilhena Reina, ¶ 45.

[39] The petition is attached to the Decl. at Kátia Vilhena Reina, ¶ 47 **Exhibit H**.

[40] The Amicable Plan is attached to the Decl. at Kátia Vilhena Reina, ¶ 48 as **Exhibit I**.

[41] See Decl. at Kátia Vilhena Reina, ¶ 46.

[42] Proceeding No. 1188238-40.2024.8.26.0100, pending before the 10th Family and Succession Chamber of the São Paulo State Court.

Ilde in foreign jurisdictions to the estate and to remove Roberto as an heir, considering his conduct to hide assets from the Probate Proceeding.[43]

According to Article 1.992 of the Brazilian Civil Code, the heir that conceals assets from the common estate will lose his rights over his share of the common estate. In case these goods no longer exist, the heir will pay their amount, in addition to losses and damages. In addition, Article 1,996 of the Brazilian Civil Procedure Code states that a claim for concealed assets can only be brought by a claimant after a description of all assets is given by the administrator of the estate, and he must represent that there are not any other assets to be included in the estate. This is the current situation.[44]

Roberto, as administrator of the estate in Ilde's Probate Proceeding, falsely represented that Ilde did not have other assets than those considered for the adoption of the Amicable Plan, and only because of this false representation Petitioner signed and agreed to adopt the Amicable Plan. However, as later found out by Petitioner, this information did not represent the truth and hid all the assets kept by Ilde in foreign jurisdictions.[45]

Given that Roberto did not describe on purpose, under the condition of estate administrator, all existing goods that belong to his mother, he may bear the consequences imposed by the Brazilian Civil Code.[46]

Moreover, in a case that there is fraud in a partition plan, where the heirs failed to demonstrate to the Court all the deceased's assets, the amicable plan may be annulled, according to Brazilian law. Article 657 of the Brazilian Civil Procedural Code provides: "*An amicable*

---

[43] A copy of the initial filing is attached to the Decl. at Kátia Vilhena Reina, ¶52 as **Exhibit J**.

[44] See Decl. at Kátia Vilhena Reina, ¶ 53.

[45] See Decl. at Kátia Vilhena Reina, ¶ 55.

[46] See Decl. at Kátia Vilhena Reina, ¶ 56.

*distribution, drafted in a public instrument, entered in writing into the records of the probate process or reported in a private written document ratified by a judge, may be annulled due to fraud, coercion, essential mistake or intervention by an incapacitated party, considering what is provided by para. 4 of section. 966.*"[47]

In addition, section 658 provides: "*The distribution judgment may be vacated: a) in the cases mentioned in [section] 657; b) if rendered in violation of the legal formalities; c) if an heir was pretermitted or one who is not an heir was included.*"[48]

Lastly, section 966, paragraph 4 provides, in pertinent part: "[w]aivers of rights by the parties or by other participants in the proceedings and ratified by the court, as well as judicial acts of ratification performed during the execution, are subject to annulment, pursuant to the law."[49]

On December 03, 2024, considering that sensitive information on DCP could be provided in the course of the proceeding, the Brazilian court granted Petitioner's request for the Concealed Assets proceeding to be conducted under seal.[50] The Order is attached to the Declaration as **Exhibit K**.

In addition to the Concealed Assets Proceeding, Petitioner also filed proceedings in the United Kingdom, in France, and in Monaco, in an attempt to gather more information on his mother's assets kept in foreign jurisdictions, but which were never disclosed by Roberto to him or to the Probate Court.[51]

---

[47] See Decl. at Kátia Vilhena Reina, ¶ 58.

[48] See Decl. at Kátia Vilhena Reina, ¶ 59.

[49] See Decl. at Kátia Vilhena Reina, ¶ 60.

[50] See Decl. at Kátia Vilhena Reina, ¶ 62.

[51] See Decl. at Kátia Vilhena Reina, ¶ 63.

### H. **Respondents Possess Highly Material Information For Use in the Foreign Proceedings**

The documents and information sought in this 1782 Application are relevant and essential for the Brazilian court to (i) revert the Amicable Plan, adopted based on false information provided by Roberto, and (ii) allow Petitioner to claim his fair share of Ilde's estate, especially considering assets that have not been disclosed to the Probate Court.[52]

The New York Correspondent Banks, CHIPS, and FED-NY conduct business and process wire transfers and payment for several of foreign banks involved in U.S. Dollar denominated transfers. Therefore, they can provide dates and amounts of the wire transfers in US dollars conducted by Roberto and Ilde, or companies controlled by them.

With this information, the Petitioner will show to the Brazilian Court in the Concealed Assets Proceeding how Roberto acted to conceal assets from the Probate Proceeding to the detriment of the rightfully partition of the estate equally among the heirs.[53]

Therefore, Petitioners must obtain bank statements, financial transaction receipts, asset and portfolio reports, and other financial documents that show the money flows to international financial institutions directly linked to Mrs. Ilde's common estate.[54]

---

[52] See Decl. at Kátia Vilhena Reina, ¶ 68.

[53] See Decl. at Kátia Vilhena Reina, ¶ 69.

[54] See Decl. at Kátia Vilhena Reina, ¶ 69.

<u>**ARGUMENT**</u>

**I.  THIS APPLICATION SATISFIES THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782(a) AND THE *INTEL* DISCRETIONARY FACTORS**

Section 1782 of Title 28 of the United States Code permits United States District Courts to grant discovery for use in a pending or "reasonabl[y] contemplat[ed]" foreign proceeding. *Intel*, 542 U.S. at 259.  The statute, in relevant part, states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person.

28 U.S.C. § 1782.

An Application made pursuant to Section 1782 must satisfy three statutory requirements: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (1) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person". *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2nd Cir. 2012).

After determining that the three statutory requirements are satisfied, the District Court can grant discovery at its discretion. *See In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 78 (2d Cir. 1997).

The Supreme Court has decided on four factors that courts may consider when exercising that discretion: (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (iii) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United

14

States"; and (iv) whether the request is "unduly intrusive or burdensome*." See Intel Corp.,* 542 U.S. at 264-65; accord *In re Doosan Heavy Indus. & Constr. Co., Ltd*., 2020 WL 1864903, at 1 (E.D.N.Y. Apr. 14, 2020).

Moreover, courts in this circuit "evaluate discovery requests under Section 1782 in light of the statute's twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts". *Euromepa S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095, 1097 (2d Cir. 1995); *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997). Both the Supreme Court and the Second Circuit have acknowledged a Congressional intent to provide a liberal avenue to discovery in aid of foreign and international proceedings. *See, e.g. Intel,* 542 U.S. at 247-48; *Brandi-Dohrn*, 673 F.3d at 80 ("[T]he statute has, over the years, been given increasingly broad applicability."); *In re Edelman,* 295 F.3d 171, 179-80 (2d Cir. 2002) ("In sum, Congress has expressed as its aim that the statute be interpreted broadly….").

## A.    Petitioner Satisfies the Statutory Requirements of 28 U.S.C. § 1782.

The Petitioner satisfies the three statutory requirements of Section 1782: (1) Respondents are "found" in the Southern district of New York; (2) the requested information is for use in the Concealed Assets Proceeding, a foreign proceeding currently pending in Brazil; and (3) Petitioner is an "interested person" because he is a party and claimant to the Concealed Assets Proceeding as a mandatory heir.

### 1.  *Respondents Are "Found" In The Southern District Of New York.*

To satisfy the first statutory requirement, Petitioner must demonstrate that the Respondents "reside" or "are found" in the Southern District of New York. For purposes of Section 1782, a corporation "resided or is found in" a jurisdiction if it is "at home" there, such as when the

jurisdiction is the corporation's place of incorporation or its principal place of business. *In re Sargeant,* 278 F. Supp. 3d 814, 820 (S.D.N.Y. 2017). Additionally, in certain circumstances, a corporation may "reside or be found in" a jurisdiction where its operations are "substantial and of such nature as to render the corporation at home in that State." *Id. . See also In re de Aquino Chad,* No. 19 Misc. 261, 2019 WL 2502060, at *3 (S.D.N.Y. June 17, 2019) (finding that banks alleged to be headquartered in the District were subject to general jurisdiction, satisfying the first prong of § 1782).

All Respondents have their main place of business and are headquartered in this District, as acknowledged by the District Court in *In re Investbank PSC*, No. 20 MISC. 260 (AT), 2020 WL 8512850 (S.D.N.Y. Dec. 30, 2020) in which Respondents were the same as in those in this Application. Accordingly, the first statutory requirement is met.

2.   *The Requested Discovery is "For Use" In a Foreign Proceeding.*

The information sought in the proposed Subpoenas is "for use" in a foreign proceeding. At the outset, the Concealed Assets Proceeding qualify as a proceeding in a "foreign or international tribunal" for purposes of Section 1782. Indeed, numerous courts have found that civil proceedings (including probate proceedings and those connected to probate proceedings) before Brazilian courts satisfy Section 1782's requirements. *In re Pimenta*, 942 F. Supp. 2d 1282 (S.D. Fla. 2013) (authorizing 1782 discovery for use in secondary estate distribution proceeding in Brazil probate court); *Matter of Colombo Agroindustria S.A.,* 22-21670-MC, 2022 WL 2167719 (S.D. Fla. June 16, 2022); *In re Lane*, 2022 WL 16737132, at *2 (authorizing 1782 discovery to, inter alia, determine the location of partnership assets, for use in Brazilian civil proceedings). Likewise, Petitioner's requested discovery is "for use" in the Concealed Assets Proceeding.

Under Second Circuit law, Petitioner is not required to show that the information sought would be discoverable or admissible in the Foreign Proceeding. *See Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) ("[A]s a district court should not consider the discoverability of the evidence in the foreign proceeding, it should not consider the admissibility of evidence in the foreign proceeding in ruling on a section 1782 application."). Rather, petitioners only need to show that it has "the practical ability . . . to place a beneficial document—or the information it contains—before a foreign tribunal." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017). Notwithstanding, because the transactions from which Petitioner seeks information were held in U.S. Dollars and in foreign jurisdictions, he cannot obtain this information in Brazil.

Therefore, Petitioner satisfies this requirement. As explained above, there is already a pending proceeding in Brazil, to which the information sought in the Subpoenas is highly material and relevant. Petitioner intends to use the evidence to further support his allegations and claims in the Brazilian Proceeding concerning the fair and equal share of his mother's estate.

   *3. Petitioner is an "Interested Person".*

Finally, Section 1782 requires persons seeking discovery to show that they possess a reasonable interest in the foreign proceedings. While Section 1782 broadly covers those with the right to participate and submit evidence in foreign proceedings, *see Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015), there is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256. Petitioner is the claimant in the Concealed Assets Proceedings and possess a relevant role as one of the mandatory heirs of Ilde. He is, therefore, an 'interested person' pursuant to Section 1782.

### B.    All of the Discretionary Factors Weigh in Favor of Petitioners' Application

Each of the *Intel* factors weighs in favor of granting the requested discovery. First, Respondents are not and will not be parties to the Brazilian Proceeding.  Second, there is no reason to believe that the Brazilian court would be unreceptive to evidence obtained through Section 1782 discovery.   Third, Petitioner is acting in good faith and is not seeking to avoid any foreign restriction on gathering evidence. Fourth, Petitioner's narrowly tailored document requests are carefully circumscribed and targeted to key facts so as to avoid undue burden on Respondents.

*1.    Respondents Are Not and Will Not Be Participants in the Probate Proceeding.*

"The first discretionary factor asks the Court to evaluate whether the documents or testimony sought by the application are within the foreign tribunal's jurisdictional reach, and thus accessible without resort to § 1782". *In re Application of 000 Promneftstroy for an Order to Conduct Discovery for use in Foreign Proceeding,* 134 F. Supp. 3d 789, 792 (S.D.N.Y. 2015). Courts typically find that where the target of discovery is not a party to the underlying litigation, this factor weighs in favor of granting the application. *See Gorsoan Ltd. V. Bullock,* 652 F. App'x 7, 9 (2d Cir. 2016) ("Indisputably, Remmel, Smith, and RIGroup are not parties to the Cyprus proceedings, and so the first Intel factor weighs in favor of discovery against them."); *In re BNP Paribas Jersey Tr. Corp. Ltd. for an Order Pursuant to 28 U.S.C. §1782 to Conduct Discovery for Use in Foreign Proceedings,* No. 18-MC-00047 (PAC), 2018 WL 895675, at *3 (S.D.N.Y. Feb. 14, 2018).

Here, the Respondents are not participants in the Concealed Assets Proceeding and will not be. Therefore, the Brazilian court cannot order or otherwise compel Respondents to produce documents.[55] As such, this factor favors granting the Application.

---

[55] See Decl. at Kátia Vilhena Reina, ¶ 72.

2.  *The Brazilian Probate Court is Receptive to U.S. Judicial Assistance.*

Under the second *Intel* factor, this Court should look to whether the foreign tribunal would be receptive to evidence obtained through Section 1782. *See In re Application of OOO Promnesftstroy*, No. M 19-99(RJS), 2009 WL 3335608, at *7 (S.D.N.Y. Oct 15, 2009) (describing the second *Intel* factor as inquiring into whether the foreign proceeding would "*reject* evidence obtained with the aid of section 1782").

There is a strong presumption that the Brazilian court will be receptive to evidence obtained in the United States, with the Second Circuit holding that "[a]bsent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995). A court should deny discovery on the basis of lack of receptiveness only where it is provided with "*authoritative proof* that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." *Id.* at 1100 (emphasis added). *See In re Safra*, 2022 WL 3584541, at *5 ("objection to U.S. federal-court judicial assistance would have to come from an official source, such as an agent of the [foreign] government."); *Schmitz*, 376 F.3d at 84 (district court denied discovery request where German Ministry of Justice and local German prosecutor explicitly asked district court to deny it).

As stated in the Declaration, Brazilian authorities and Courts are receptive to assistance from U.S. District Courts in terms of gathering relevant evidence for use in Proceedings pending before them.[56] In addition, the Brazilian court, by granting Petitioner's request to conduct the Proceeding under seal, confirmed that financial evidence on DCP's bank accounts may be provided during the Proceeding.[57] Therefore, there is no reason to believe that the Brazilian court

---

[56] See Decl. at Kátia Vilhena Reina, ¶ 71.
[57] See Decl. at Kátia Vilhena Reina, ¶ 71.

would reject evidence produced with this Application. Thus, the second *Intel* factor weighs in favor of granting the Application.

      *3.   This Application Does Not Circumvent the Rules of the Foreign Authorities and Courts.*

This Application does not "attempt to circumvent" proof-gathering restrictions of the Brazilian courts and criminal authorities; thus, the third discretionary factor also weighs in favor of granting discovery. *Intel,* 542 U.S. at 264-65. For purposes of this inquiry, proof-gathering restrictions "'are best understood as rules akin to privileges that prohibit the acquisition or use of certain materials, rather than as rules that fail to facilitate investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information'" *In re Accent Delight Int'l Ltd.,* No. 16-MC-125 (JMF), 2018, WL 2849724, at * 4 (S.D.N.Y. June 11, 2018) (quoting *Mees*, 793 F.3d at 303 n. 20).

The *Intel* Court expressly rejected the notion that Section 1782 requires that the evidence sought must be discoverable in the foreign proceeding itself, and the Second Circuit has added that the specific documents or testimony discovered need not be admissible abroad. *See Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) ("While *Intel* concerned the discoverability of evidence in the foreign proceeding, we see no reason why it should not extend to the admissibility of evidence in the foreign proceeding. As in *Intel*, there is no statutory basis for any admissibility requirement."); *Intel*, 542 U.S. at 261 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts."). Nor is there any requirement that Petitioner must exhaust his remedies in the foreign court first. *See In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d

Cir. 1997) ("[A] 'quasi-exhaustion requirement' finds no support in the plain language of the statute and runs counter to its express purposes.").

There are no prohibitions arising from Brazilian laws, and/or public policies, or specifically from the Brazilian court that limit Petitioner's rights to bring evidence obtained in the United States to the Concealed Assets Proceeding. [58] Therefore, the third *Intel* factor weighs heavily in favor of granting Petitioner's Application.

4. *The Application is Tailored to Avoid Unnecessary Burdens in Accordance With the Federal Rules of Civil Procedure*

Finally, the fourth *Intel* factor favors granting discovery because the Application is narrowly tailored to include only relevant, non-privileged information and avoid any undue burden on Respondents. "[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302 (citing *In re Edelman*, 295 F.3d at 179 ("Limits may be proscribed on [§ 1782] discovery or an existing order may be quashed under Rule 26(c).")). Under a Section 1782 discovery order, relevancy is defined as any information that "bears on, or reasonably could lead to other matter that could bear on" the Applicant's claims or defenses in the foreign action. *In re Ex Parte Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. §1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings*, No. 15-MC-417 (LAK), 2016 WL 702327, at *9 (S.D.N.Y. Feb. 18, 2016) (internal citations and quotation marks omitted).

---

[58] See Decl. at Kátia Vilhena Reina, ¶ 73.

As described above, the requested documents directly bear on the Correspondent Banks' involvement in transmitting, receiving, and/or maintaining assets which are now part of Ilde's common estate.[59]

Furthermore, the requested discovery would not be unduly burdensome for the Correspondent Banks to produce, as the requests are targeted in scope and are of the type regularly maintained by and easily accessible to the Correspondent Banks. *See*, *e.g.*, *In re Bourlakova,* No. 24-MC-71 (JPO), 2024 WL 4839047, at *1 (S.D.N.Y. Nov. 20, 2024) (finding no undue burden in requests issued to CHIPS pursuant to Section 1782 for use in a foreign proceedings related to a deceased's common estate and stating that "[T]he scope of discovery, while broad, is not unduly so, given that the underlying U.K. Proceeding names thirteen defendants, involves high-net-worth individuals who own numerous companies, and alleges wide-ranging claims of asset misappropriation…. Courts in this district have routinely granted similar § 1782 applications.") *In re W. Afr. Min. Trading Ltd.,* No. 24 MISC. 114 (DEH), 2024 WL 3862293, at *5 (S.D.N.Y. Aug. 19, 2024) (finding that financial statements and records related to wire transactions involving parties to the foreign proceedings are routinely subpoenaed in litigation and therefore proportionate, representing minimal burden for Respondents).

Because the requested discovery (1) seeks material, non-privileged documents and information collected by the Correspondent Banks in connection with transactions related to Ilde's common estate; (2) is limited by date and transaction-type; (3) is maintained in the normal course of business by the Correspondent Banks; and (4) is sufficiently specific to allow the Correspondent Banks to conduct targeted searches to identify and produce the documents and information with minimal burden, it is not possible to affirm that it is unduly burdensome nor intrusive.

---

[59] See Decl. at Kátia Vilhena Reina, ¶ 73.

The documents should thus be easily identifiable, readily accessible, and not burdensome for Respondents to produce. In the unlikely event, however, that this Application and the desired discovery create a burden or other issues for one of the Respondents, Petitioner would be more than willing to accommodate and confer with them to resolve any such issues in good faith. *See, e.g. In re Bernal*, 18-21951-MC, 2018 WL 6620085 (S.D. Fla. Dec. 18, 2018) ("As for the concern over the production of sensitive personal and financial information, there is no reason why a stipulated protective order cannot be mutually agreed upon that would limit any use of the items produced for consideration in the foreign proceeding.").

## II.    THE PETITIONER SEEKS THE APPLICATION TO BE GRANTED *EX PARTE*

It is not uncommon for District Courts to grant Applications made pursuant do § 1782 *ex parte*. Courts in this Circuit and across the country have recognized that Section 1782 applications made on an *ex parte* basis are properly filed and routinely granted[60]. Such applications are "customarily received and appropriate action taken with respect thereto *ex* parte" because "witnesses can raise[] objections and exercise[] their due process rights my motions to quase the subpoenas."[61]

Here Petitioner requests that his *ex parte* Application be granted without prejudice to Respondents' rights to move to vacate this Court's approval order and/or quash the subpoenas

---

[60] *See e.g., Esses v. Hanania (In re Esses)*, 101 F.3d 873, 874 (2d Cir. 1996) (affirming grant of ex parte order under Section 1782); *In re Application of Gianoli*, 3 F.3d 54, 55 (2d Cir. 1993) (same); *see also In re Mota*, No. MC 19-00369 (MN), 2020 WL 95493, at *1 (D. Del. Jan. 8, 2020) ("Discovery applications under § 1782 are often granted *ex parte*"); *In re Request for Int'l Jud. Assistance From the Nat'l Ct. Admin. of the Republic of Korea*, No. C15-80069 MISC LB, 2015 WL 1064790, at *2 (N.D. Cal. Mar. 11, 2015) ("An *ex parte* application is an acceptable method for seeking discovery pursuant to § 1782.").

[61] *See Gushlak v. Gushlak,* 486 F. App'x 215 (2d Cir. 2012) ("it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*."); *In re Letter of Request from Supreme Court of Hong Kong*, 138 F.R.D. 27, 32 n.6 (S.D.N.Y. 1991) ("Indeed, such *ex parte* applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request, and will then have the opportunity to move to quash the discovery or to participate in it."); *In re Gemeinschaftspraxis Dr. Med. Schottdorf,* No. Civ. M19-88 (BSJ), 2006 U.S. Dist. LEXIS 94161, at *1 (S.D.N.Y. Dec. 29, 2006) (denying motion to quash subpoena issued ex parte under 1782).

Petitioners would issue thereunder. Therefore, the request made by Petitioner is not extraordinary and it complies with District Courts' precedents. *See Gushlak v. Gushlak,* 486 Fed.Appx. 215, 217 (2d Cir. 2012).

## **CONCLUSION**

For the reasons set forth above, Petitioner respectfully requests that the Court grants an order authorizing its undersigned U.S. counsel to serve the proposed subpoenas and conduct the requested discovery in this District pursuant to 28 U.S.C. § 1782.

Dated:      April 21, 2025.
           New York, New York         Respectfully submitted,

                                    EPGD ATTORNEYS AT LAW, P.A.
                                    Attorneys for Petitioner
                                    777 SW 37th Ave. Ste. 510
                                    Miami, FL 33135
                                    T: (786) 837-6787
                                    F: (305) 718-0687
                                    andrea@epgdlaw.com
                                    joanna@epgdlaw.com

                                    By: _____
                                    Andrea Natale, Esq.
                                    NY Bar No: 5638952